```
                         UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA

    * * * * * * * * * * * * * * *    )
    UNITED STATES OF AMERICA,        )    Criminal Action
                                     )      No. 21-00609
              Plaintiff,             )
                                     )
      vs.                            )
                                     )
    JEREMY BROWN,                    )    Washington, D.C.
                                     )    April 26, 2022
              Defendant.             )    1:01 p.m.
                                     )
    * * * * * * * * * * * * * * *    )


         TRANSCRIPT OF STATUS CONFERENCE CONDUCTED VIA ZOOM
              BEFORE THE HONORABLE AMIT P. MEHTA,
                  UNITED STATES DISTRICT JUDGE



    APPEARANCES:

    FOR THE GOVERNMENT:      LOUIS J. MANZO, ESQ.
                             UNITED STATES DEPARTMENT OF JUSTICE
                             1400 New York Avenue, Northwest
                             Washington, D.C. 20002


    FOR THE DEFENDANT:       ALLEN H. ORENBERG, ESQ.
                             THE ORENBERG LAW FIRM, P.C.
                             12505 Park Potomac Avenue
                             Sixth Floor
                             Potomac, Maryland 20854


    REPORTED BY:             LISA EDWARDS, RDR, CRR
                             Official Court Reporter
                             United States District Court for the
                               District of Columbia
                             333 Constitution Avenue, Northwest
                             Room 6706
                             Washington, D.C. 20001
                             (202) 354-3269
```

```
 1                THE COURTROOM DEPUTY:  Your Honor, this is
 2    Criminal Case No. 21-609, the United States of America
 3    versus Jeremy Brown.
 4                Louis Manzo for the Government; Allen Orenberg for
 5    the defense.
 6                The Defendant's appearing via videoconference for
 7    this hearing.
 8                THE COURT:  Good afternoon.  Can everybody hear me
 9    all right?
10                THE DEFENDANT:  I can barely hear you, your Honor.
11                THE COURT:  Can everybody hear me now?
12                MR. MANZO:  Yes, your Honor.
13                THE COURT:  Mr. Brown, can you hear me?
14                THE DEFENDANT:  Still a little bit low.  But let
15    me see if I can get the deputy to turn the volume up.
16                BUREAU OF PRISONS OFFICIAL:  The volume's all the
17    way up.
18                THE COURT:  Okay.
19                THE DEFENDANT:  No worry.  The volume's all the
20    way up.
21                THE COURT:  I'll speak right into the microphone.
22    If you have trouble hearing me, let me know.
23                First, let me thank you for your patience.  I'm
24    sorry.  We're in the middle of trial and we were trying to
25    get a witness done and off the stand before the lunch break.
```

```
 1      So apologies for the delay.
 2              So we set this hearing essentially to see where
 3      things stand with Mr. Brown's case in Florida.  Can somebody
 4      provide me an update and thoughts on how to proceed?
 5              MR. ORENBERG:  Your Honor, this is Allen Orenberg.
 6      I'll go ahead first.
 7              It's my understanding that with respect to
 8      Mr. Brown's case in Florida that he has engaged new counsel,
 9      though I did not check PACER down there.  I'm not sure if
10      his new counsel, Mr. Funk Futterman, entered his appearance
11      in that case or not.  Maybe Mr. Manzo knows.
12              But in the same light, so to speak, Mr. Brown has
13      indicated to me that he's either going to engage his new
14      counsel for this case before your Honor or perhaps interview
15      other attorneys or perhaps seek the Court's permission to
16      proceed *pro se* in this case.
17              THE COURT:  Okay.  Anything else you want to
18      represent, Mr. Orenberg?
19              MR. ORENBERG:  No.  Not at this time.
20              THE COURT:  If in fact in this case -- if in fact
21      Mr. Brown has retained new counsel in the Florida case, I
22      assume that means that whatever scheduling order was in
23      place then is being -- it may be requested to be modified or
24      have to be modified.
25              Mr. Manzo, would you have any idea?
```

1              Mr. Orenberg, do you have any idea?
2              MR. MANZO:  Yes.  I believe, your Honor, that
3     there's now an August 1 trial date for the Florida matter.
4              THE COURT:  So as an August 1 trial date,
5     Mr. Brown, let me just ask you again, just as a requirement
6     while you're on the record here, just a simple question:
7     What is your intention with respect to counsel in this case?
8              THE DEFENDANT:  Your Honor, I would like to
9     request a *Faretta* hearing so that I can go ahead and appoint
10    myself as lead counsel in the two misdemeanor charges out of
11    D.C. for now.  Obviously, it's an ever-evolving situation.
12    I have many, many different options as far as legal counsel
13    on the back end that we're working through.
14             But obviously, the Florida case is going to move
15    forward.  And so like I said, it's ever-evolving.  But for
16    now, being that it's been 209 days that I'm incarcerated
17    without being given the discovery in this case or any type
18    of defense development up to this point, I feel like it
19    would be best if I just go ahead and represented myself in
20    the two misdemeanor charges out of D.C.
21             THE COURT:  Okay.  Mr. Orenberg, can you tell me
22    what the status is of discovery with respect to your client
23    and efforts to share that with him?
24             MR. ORENBERG:  Yes, your Honor.  I'd be happy to.
25             I don't recall the exact date, but many months ago

1    I did send a USB memory stick containing the nonsensitive
2    case evidence down to Mr. Brown.  He indicated to me that he
3    was able to view that evidence on a laptop or some device
4    that was provided to him at the Pinellas County Jail.
5              Last month, on or about April 15th, my
6    investigator traveled to Tampa, Florida, to meet with
7    Mr. Brown at the Pinellas County Jail on the 17th of March.
8    Between my investigator and myself, we thought we had it
9    arranged that he was going to have the type of visit that he
10   would be able to easily share and view together with
11   Mr. Brown the sensitive and highly sensitive case materials
12   in this case.
13             Unfortunately, when my investigator arrived at the
14   jail, at the visitors' center for the jail, he was given
15   initially a station or a kiosk that was not conducive to the
16   sharing of the case materials.  They tried to get him to
17   another station, but it wasn't available.
18             There was some back-and-forth between my
19   investigator and the jail; and in fact, my investigator got
20   then Mr. Brown's attorney down there involved, trying to
21   help my investigator get adequate access to my client, to
22   our client, so that they could view the case materials
23   together.  That was not doable on the 17th.
24             My investigator went back on the morning of the
25   18th to visit again with Mr. Brown, but was informed that

1    the visit would be cut short.  I think my investigator was
2    there for less than an hour and the jail for some reason cut
3    the visit short.  And that was the extent of it with respect
4    to my client being able to see the sensitive and highly
5    sensitive materials in this case.
6              THE COURT:  Well, let me just ask one final
7    question of Mr. Orenberg:  To the extent that you can share
8    this, during that hour visit, was your investigator able to
9    show him the discovery material, sensitive, highly sensitive
10   or otherwise, that you would hope to show him or was that
11   cut short?
12             MR. ORENBERG:  On the second day?  Is that what
13   you're referring to?
14             THE COURT:  Yes.  I'm referring to the second day.
15             MR. ORENBERG:  No.  Unfortunately, he was not
16   given adequate access or adequate electronic access to share
17   with Mr. Brown the sensitive and highly sensitive case
18   materials.
19             THE COURT:  Well, I'm not following.  What do you
20   mean, he wasn't given electronic access?  I thought you took
21   a laptop and a memory stick.
22             MR. ORENBERG:  That is correct. As I understand
23   it, they did not meet in person.  My investigator was shown
24   to a kiosk where he was told to, you know, play the
25   materials to a video screen, which in turn would relay that

```
 1   information to Mr. Brown.  They were not together in the
 2   same room.  And there was some glitches or problems with
 3   this video system that the Pinellas County Jail has in
 4   place.
 5              THE COURT:  So, Mr. Brown, I'm sorry that the
 6   efforts were thwarted to share the discovery with you.  I'll
 7   just leave it at that.
 8              I think the question is:  What do we do now?  I
 9   mean, Mr. Brown, if you are really intent on proceeding in
10   this case on your own, we can talk about having that
11   hearing.  I can't do it today.  It sounds like Mr. Orenberg
12   has been making efforts to get you the discovery that you
13   are entitled to review and receive.  And given that you are
14   remaining in Florida pending this trial and the Government
15   is not, it sounds like, insisting upon a trial date in this
16   case or that you accept a plea agreement by a date certain,
17   I wonder whether we ought to still keep Mr. Orenberg in
18   place until you can -- well, at least for a little bit
19   longer until we can figure out when you're going to be able
20   to get up here.
21              THE DEFENDANT:  Well, your Honor, there's only
22   been that one single attempt at discovery.  And again, like
23   I said, tomorrow will be seven months.  I also had 35 pages
24   of notes that have yet to be gone over from the nonsensitive
25   discovery as well as 14 pages of handwritten notes in
```

1    response to the original charging document that also has not
2    been gone over.
3            So I've spent seven months in jail and have not
4    even had seven hours with my attorney in this case.  And
5    just about every single video visit that we've had has
6    encountered some type of technical difficulties or, like you
7    said, you know, when Mr. Turner came down here, it was
8    supposedly ready to go.  But when he got here, it was a
9    complete no-go.
10           THE COURT:  Let me say the following, Mr. Brown:
11   I haven't studied the terms of the protective order, and it
12   depends on whether Mr. Orenberg can let me know.  But in
13   instances where somebody is representing themselves, it's
14   not clear to me that by virtue of that that they'll be able
15   to get access to the sensitive and highly sensitive
16   information simply by, you know, delivering that information
17   to a jail and being able to keep it there.
18           There may need to be other arrangements for you to
19   view that kind of information at a U.S. attorney's office or
20   some other way.  But I did --
21           THE DEFENDANT:  It's a conundrum now.
22           THE COURT:  Does the protective order contemplate
23   how the material would be handled in that situation,
24   Mr. Manzo?
25           MR. MANZO:  Your Honor, I can check with my

1    colleagues on that.  I have not encountered that myself so
2    far in the January 6th cases.  And this is identical to
3    another one, an Oath Keeper's case who is proceeding *pro se*.
4    So I can definitely check with -- I know a couple of my
5    colleagues who have handled incarcerated defendants, and
6    I'll find out what they have done.
7             I believe the problem would be those that -- those
8    incarcerated defendants have been at least at D.C. Jail
9    where they've had access to evidence.com.  And Mr. Brown is
10   held in Florida.
11            THE COURT:  Right.  Let's do the following:  Let's
12   just carry this over for a couple of weeks.
13            Mr. Manzo, you can figure out what's happening in
14   terms of if in fact they're confined to a situation where an
15   out-of-town defendant is seeking to proceed *pro se*.
16            Mr. Brown, hopefully we can get some clarity on
17   whether you want to have new counsel in this case or not
18   when we come back.  If you still wish to proceed on your
19   own, we'll conduct the hearing on that date and we'll just
20   have to figure out how we move forward.
21            But right now, we are currently stuck because
22   you've got this outstanding date in August for your other
23   case and you are not in the District of Columbia and you're
24   detained in that other case.
25            THE DEFENDANT:  That's right, your Honor.  But I

1  would like to be able to prepare for my case in D.C.  And it
2  seems that since the protective order is in violation of
3  Article VI of the Bill of Rights preventing me from seeking
4  the evidence against me because of the Government's desire
5  to classify everything as sensitive and highly sensitive, it
6  seems that I am unable to prepare for my case in D.C. at
7  this time.
8              THE COURT:  Well, let me interrupt you for a
9  moment, Mr. Brown.
10             I mean, I don't know that we're at a point now to
11 declare that your rights have been violated in part because
12 this is the first time I am hearing of your desire to
13 proceed *pro se* and the issue has come up about how to get
14 this material to somebody who's out of town and wishing to
15 proceed *pro se*.  So I have to figure that out, and we will
16 endeavor to do that in the next couple of weeks.
17             You are right:  If you do proceed *pro se*, you have
18 a right to get access to that material to prepare.  The
19 question is, however, how that is to be facilitated, given
20 that you are not in the District of Columbia.  So --
21             THE DEFENDANT:  It's my understanding that the
22 system the DOJ is using is web based.  So I'm pretty sure
23 the Pinellas County Jail has internet access.
24             THE COURT:  It's a little bit more complicated
25 than that, I'm afraid.  So we're just going to have to work

1  that out, because these are not simply websites you can log
2  onto without credentials.  And importantly, I don't know if
3  the Pinellas County Jail is adequate to give you access to
4  these websites, given the kind of bandwidth it's going to
5  require to access them and view the evidence.
6          THE DEFENDANT:  Your Honor, it's my understanding
7  that the Pinellas County Jail holds a federal contract with
8  the U.S. Marshals to detain federal inmates, which would
9  mean they should as part of that contract have the
10 capabilities to allow inmates to review discovery through
11 any government --
12         THE COURT:  Maybe; maybe not.  I don't know what
13 the terms of those contracts are and I don't even know
14 whether they even address the issue of access to discovery.
15         But, look, we will investigate these matters over
16 the next couple of weeks and figure out what's going to
17 happen.  Again, Mr. Brown, I urge you to think about whether
18 you'd like to actually replace counsel in this case,
19 particularly given your trial is not even pending in this
20 matter.  But I understand if you do want to proceed *pro se*.
21 We can figure that out.
22         So --
23         THE DEFENDANT:  Well, your Honor, I've had plenty
24 of time to already make that decision.  I would like to at
25 this time request a *Faretta* hearing.  And if at a later time

```
 1    I choose to retain additional counsel, then I will bring
 2    that to the Court's attention.
 3              THE COURT:  Okay.
 4              THE DEFENDANT:  But let's go ahead and schedule
 5    that.
 6              THE COURT:  Let's put it down for a hearing, then,
 7    for that purpose.  And I'll ask Mr. Orenberg to at least
 8    still be caretaker counsel until that happens.
 9              I'll ask Government counsel and Mr. Orenberg to
10    try and figure out what, if anything, can be done up to and
11    including perhaps allowing Mr. Brown to view the evidence
12    through his local U.S. attorney's office.  You all get
13    creative about how to work this out.
14              So do we have any particular times with Pinellas
15    County?  I'm supposed to be in trial that week, as I am
16    every single remaining week for the rest of time, it seems.
17    So how about 12:30 again?  Why don't we say 1:00, just to be
18    on the safe side, on May the 10th, if everyone's available.
19              MR. ORENBERG:  Yes, your Honor.
20              THE COURT:  Mr. Manzo?
21              MR. MANZO:  Thank you, your Honor.  Yes.
22              Is that for the *Faretta* hearing or just to check
23    in to determine whether the *Faretta* hearing will proceed?
24              THE COURT:  No.  We'll proceed with the *Faretta*
25    hearing that day unless I'm told otherwise in the interim.
```

1       And by then, we should have some answers about how to get
2       Mr. Brown the discovery he is seeking and access to that
3       discovery.
4               So I'll exclude the time through the next hearing
5       date of May the 10th.  I do find that the interests of
6       justice outweigh the interests of the Defendant and the
7       public in a speedy trial.  First and foremost, time is
8       included because Mr. Brown is not present in this
9       jurisdiction.  He's now indicated additionally that he
10      wishes to proceed *pro se*; and we'll need to figure out the
11      logistics of doing that, particularly since he is out of
12      town and is seeking access to discovery consistent with the
13      terms of the protective order.
14              And so we'll carry it over for a couple weeks,
15      excluding time for the next couple of weeks, and we'll
16      convene at 1:00 on May the 10th.
17              Anything further, counsel?
18              MR. ORENBERG:  No.  Thank you, your Honor.
19              MR. MANZO:  No, your Honor.
20              THE COURT:  Thank you all for your patience.
21      We'll see you in a couple weeks.
22              (Proceedings concluded.)
23
24
25

**CERTIFICATE**

I, LISA EDWARDS, RDR, CRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings produced to the best of my ability.

Please note:  This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of reporting remotely.

Dated this 25th day of July, 2022.

/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
  District of Columbia
333 Constitution Avenue, Northwest
Washington, D.C. 20001
(202) 354-3269