# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

JEREMY BROWN,

                        Defendant.

No. 1:21-mj-00619-RMM

Hon. Judge Amit P. Mehta

## JEREMY BROWN's RESPONSE IN OPPOSITION TO JOINDER OF CASES FOR TRIAL AND MEMORANDUM OF LAW

JEREMY BROWN, by and through undersigned counsel, respectfully opposes the United States' Motion for Joinder of Cases for Trial. Dkt. 32.   Joinder would be an improper exercise of the Court's discretion under Federal Rules of Criminal Procedure 13 and 8(b).   Given the disparity in the charges and evidence between Mr. Brown and defendants Donovan Crowl, James Beeks, and Kellye Sorelle, Mr. Brown would be unfairly prejudiced if the joinder motion was granted.

WHEREFORE, Defendant Brown respectfully requests that the government's motion be DENIED and Mr. Brown to be tried separately from Crowl, Beeks, and Sorelle.

## I.      Background on Mr. Brown's Activities on January 6, 2020

According to the government, Mr. Brown is an "unindicted co-conspirator" in what would be the fourth Oath Keeper trial.  He along with other Oath Keepers were charged for crimes arising out of the January 6, 2020 disturbance at the United States Capitol.[1]  Weeks before the disturbance, Mr. Brown planned with other Oath Keepers to travel to Washington, D.C. on or around January 6, 2021, the date of the Certification of the Electoral College vote. Dkt. 32, pg. 3.  He coordinated the trip with the Oath Keepers via encrypted chats on the Signal platform. Dkt. 1-1, pg. 15.  The chats, filled with military

---

[1] The information in these paragraphs comes from the government's charging documents and motions and is not conceded by Mr. Brown.  It's worth noting that early on federal prosecutors represented to this Court that Mr. Brown was not part of the Oath Keepers prosecution.

acronyms, detailed how the group would travel in Mr. Brown's RV from Florida to D.C. *Id*.  Once in

Virginia, Mr. Brown and the other Oath Keepers stored weapons at a hotel. Dkt. 32. pg. 4.

On January 6, 2021, Mr. Brown was photographed more than 100 feet within a restricted area on the

Capitol grounds. Dkt. 1-1, pg. 13 (photograph in Criminal Complaint). At approximately 4:27 body worn

camera footage shows Mr. Brown at least 100 feet within a restricted area being pushed back by

Metropolitan Police officers. *Id.* pg. 14. Cell site records also show a cellphone associated with Mr.

Brown utilized a cell site that included the geographic area that included the United States Capitol. *Id.* pg.

17.  Mr. Brown is not alleged to have entered the Capitol, participated in the "military stack" of Oath

Keepers who worked their way through the crowd and into the building, or committed any of the multiple

felonies that Crowl, Beeks, and Sorelle have been charged with violating.

### A.   The Crowl and Beeks Felony Indictment

Donovan Crowl and James Beeks are charged with Conspiracy to Obstruct an Official Proceeding

in violation of 18 U.S.C. 1512(k)(Count One); Obstruction of an Official Proceeding and Aiding and

Abetting in violation of 18 U.S.C. 1512(c) and 2 (Count Two); Conspiracy to Prevent an Officer from

Discharging any Duties in violation of 18 U.S.C. 372 (Count Three); Destruction of Government Property

and Aiding and Abetting in violation of 18 U.S.C. 1361 and 2 (Count Four); Entering and Remaining in a

Restricted Building or Grounds in violation of 18 U.S.C. 1752(a)(1) (Count Five); and Civil Disorder and

Aiding and Abetting in violation of 18 U.S.C. 231(a)(3) and 2 (Count Six). *See U.S. v. Crowl, et al,* 21-cr-

28, Dkt. 684, Eighth Superseding Indictment.  There are six additional co-defendants in the indictment.

There are also eleven individuals named, but not charged in the indictment. Mr. Brown is not charged or

one of the individuals identified in the indictment.  There are currently 872 docket entries in the

Crowl/Beeks case as of this week.

### B.   The Sorelle Felony Indictment

Kellye Sorelle is charged with Conspiracy to Obstruct an Official Proceeding in violation of 18

U.S.C. 1512(k)(Count One); Obstruction of an Official Proceeding and Aiding and Abetting in violation

of 18 U.S.C. 1512(c) and 2 (Count Two); Entering and Remaining in a Restricted Building or Grounds in

violation of 18 U.S.C. 1752(a)(1)(Count Three); and Obstruction of Justice-Tampering with Documents in violation of 18 U.S.C. 1512(b)(2)(A)-(B)(Count Four). *See U.S. v. Sorelle*, 22-Cr-290, Dkt. 1, Indictment.

### C.  The Brown Misdemeanor Information

Mr. Brown is charged with two federal misdemeanors, Entering and Remaining in a Restricted Building in violation of 18 U.S.C. 1752(a)(1) (Count One) and Disorderly and Disruptive Conduct in a Restricted Building in violation of 18 U.S.C. 1752(a)(2) (Count Two).  *See U.S. v. Brown,* 21-Cr-609, Dkt. 6, Information. The charges arise from his alleged presence in a restricted area outside the United States Capitol on January 6, 2020-there is no evidence that Mr. Brown entered the building.

Mr. Brown's case in the District of Colombia has been stayed pending the resolution of a federal criminal case in the Middle District of Florida.[2]  Mr. Brown was found guilty of Possession of an Unregistered Shotgun Having a Barrell Less than 18 Inches in violation of 26 U.S.C. 5861(d) and 5871(Count One); Possession of an Unregistered Rifle Having a Barrel Less than 16 Inches in violation of 26 U.S.C. 26 U.S.C. 5861(d) and 5871(Count Two); Possession of Unregistered Explosive Grenades violation of 26 U.S.C. 26 U.S.C. 5861(d) and 5871(Counts Three and Four); Improper Storage of Explosive Material in violation of 18 U.S.C. 842(j) and 844(b)(Count Five) and Willful Retention of a National Defense Document in violation of 18 U.S.C. 793(e)(Count Six). *See U.S. v. Brown*, 21-Cr-348, Dkt. 305 (M.D.Fla.). Mr. Brown's sentencing hearing is on April 7, 2023, before Judge Susan C. Bucklew.

### D.  Government's Discovery Productions

Based on the allegations contained in the Indictments, the Information and the discovery materials, it appears the government would offer extensive evidence at a joint trial that has absolutely nothing to do with Mr. Brown or his alleged crimes.  This evidence includes electronic communications, surveillance video, social media posts, texts, chats, e-mails, cell phone data, photographs, and witness

---

[2] The undersigned counsel do not represent Mr. Brown in this case and were only retained for the two misdemeanors charges in the District of Columbia.

testimony.  The discovery relevant to Mr. Brown's minor offenses is simple and straight forward and

includes video and photographs taken on January 6, 2020, texts and chats, and social media posts.

ARGUMENT AND MEMORANDUM OF LAW

**II.        Joinder of Mr. Brown Trial with the Other Defendants is Unfair and Improper**

Rule 8(b) gives courts the discretion to join two defendants in the same trial even if charged with

some but not all the charges.  Generally, members of a conspiracy can be tried together.  But there are

established exceptions to this rule based on Constitutional and policy considerations.

Pursuant to Rule 14(a), "[i]f the joinder of offenses or defendants in an indictment . . . appears to

prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that

justice requires." Fed. R. Crim. P. 14(a). While this Court has not often granted motions to sever, it

remains firmly within the court's discretion. *Zafiro v. United States,* 506 U.S. 534, 541 (1993); *see also*

*United States v. Bridgeman*, 523 F.2d 1099, 1107 (D.C. Cir. 1975) ("The general rule is that the decision

to grant a severance is within the sound discretion of the trial judge."); *United States v. Slatten*, 865 F.3d

767, 810 (D.C. Cir. 2017) (acknowledging rule that ruling on a motion to sever is left to the "sound

discretion of the district courts" but finding it was an abuse of discretion to deny motion to sever).

The Supreme Court and the D.C. Circuit have made clear that severance is appropriate where

there is a great disparity in the charges and evidence among co-defendants which could lead to jury

confusion and an erroneous conviction. *See Kotteakos v. United States*, 328 U.S. 750, 774 (1946) (noting

the "dangers of transference of guilt from one to another" in conspiracy cases "are so great that no one

really can say prejudice to substantial right has not taken place"); *United States v. Mardian,* 546 F.2d 973,

977 (D.C. Cir. 1976) (holding severance appropriate where there is a risk that the guilt of one defendant

will "improperly 'rub off ' on the others") and *United States v. Sampol*, 636 F.2d 621, 647 (D.C.

1980)(Since vast bulk of testimony concerned crimes the defendant was not charged with and separate

proceeding would involve a short trial, a separate trial was not only prudent but required.) Given the

disparity of evidence and charges at issue, joining the defendants at trial is unwarranted.

There have been three Oath Keeper trials to date, all before this court.  Interestingly, all of the

4

defendants' charges in those three trials arose out of two indictments, one filed in case number 21-Cr-28, Dkt. 684 and the other filed in case number 22-Cr-15, Dkt. 167. Mr. Brown is not charged or named in either indictment. As shown below, *each of the defendants was charged with multiple, serious felonies* that could result in significant prison time if convicted. To add Mr. Brown to this mix is both unfair, unprecedented and highly prejudicial to his ability to be fairly tried on his two minor charges.

| Defendant/Trial Groupings | Felony Counts Charged From Indictments |
|---|---|
| **First Oath Keeper Trial** | 9/27/22 through 11/29/22 |
| Stewart Rhodes | 1, 2, 3, 4, 7 |
| Kenneth Harrison | 1, 2, 3, 4, 5, 9 |
| Thomas Caldwell | 1, 2, 3, 4, 13 |
| Jessica Watson | 1, 2, 3, 4, 5, 6 |
| | |
| **Second Oath Keeper Trial** | 12/6/22 through 1/23/23 |
| Roberto Minuta | 1, 2, 3, 4, 10 |
| Joseph Hackett | 1, 2, 3, 4, 5, 11 |
| David Moerschel | 1, 2, 3, 4, 5, 12 |
| Edward Vallejo | 1, 2, 3, 4 |
| | |
| **Third Oath Keeper Trial** | 2/1/23 through 3/21/23 |
| Connie Meggs | 1, 2, 3, 4, 5 |
| Sandra Parker | 1, 2, 3, 4, 5, 7 |
| Bernie Parker | 1, 2, 3, 5 |
| Laura Steele | 1, 2, 3, 4, 5, 7, 8 |
| Michael Greene | 1, 2, 3, 5, 9 |
| William Issacs | 1, 2, 3, 4, 5, 6, 7 |

The "legal prejudice" to Mr. Brown is discussed below. But there are other, equally important prejudices the Court must consider.  First, the potential financial burden on Mr. Brown if his case was joined with the other defendants.  Namely, the attorney's fees and costs for a multi-week or multi-month trial. [3] Essentially, after Mr. Brown was charged he hired the undersigned lawyers for the defense of two minor charges, both misdemeanors. If Mr. Brown elected to proceed to trial on those charges, it was anticipated the trial would take at the most two days. It was not foreseeable, however, that his misdemeanor trial would last several weeks, involve the review of tens of thousands of documents,

---

[3] Mr. Brown retained counsel to defend his case in the Middle District of Florida and recently hired an appellant lawyer.  It's unlikely he will have the ability to raise money to pay legal fees and costs for an extended trial in D.C.

dozens of witnesses and pleadings for defendants in different cases who were charged with different serious felonies.  In fact, none of the cases cited in the government's motion or in this response involve a defendant charged with a minor offense/misdemeanor joined at trial with multiple defendants charged with serious felonies. As discussed earlier, this is also not the case for any of the other Oath Keepers joined for trial.

Additionally, if joined with the other defendants for a lengthy trial, Mr. Brown would find himself confined to a local jail or pre-trial facility.[4]  This would last though the end of trial to his sentencing hearing. Undoubtably Mr. Brown would endure conditions of confinement less favorable than those found at a Bureau of Prisons Federal Correctional Institution.   Again, not something that was anticipated or discussed in the case law but is another factor for the Court's consideration.

### A.      There is Extreme Disparity in the Charges Against Mr. Brown and the Other Defendants

While Mr. Brown is charged with two misdemeanors, Defendants Crowl, Beeks, and Sorelle are charged with multiple serious felonies involving the disruption of the federal government, destruction of government property, obstruction of justice, and civil disorder.  If convicted, they could spend years in prison and suffer the collateral consequences of being convicted felons.  Mr. Brown's exposure is only 24 months if the Court were to impose consecutive one-year sentences.

Indeed, while the government characterized Mr. Brown as "a foot soldier" in the conspiracy there is apparently not evidence to charge him. The Crowl/Beeks Indictment includes inflammatory allegations such as: the individuals opposed by force the lawful transfer of presidential power; the individuals planned to use firearms to stop the lawful transfer of presidential power; the individuals marched in a military "stack" formation up the Capital steps and into the Capitol; some of the individuals attempted to enter the Senate Chamber while others searched for Speaker of the House Nancy Pelosi; and others remained outside D.C. in Quick Reactionary Force (QRF) teams to transport weapons to assist with the

---

[4] Mr. Brown will likely be sentenced to a term of imprisonment for his conviction in the Middle District of Florida and not eligible for pre-trial release.

operation to stop the lawful transfer of presidential power. *See U.S. v. Crowl, et al,* 21-cr-28, *Eighth Superseding Indictment,* Dkt. 684, pgs. 4-5.

While not named in the felony counts alleging the operation to stop the lawful transfer of presidential power by the Crowl, Beeks, Sorelle and other Oath Keepers, Mr. Brown is linked to the Oath Keepers organization.  This is starkly similar to the facts in *United States v. Sampol.*  There, a defendant (Mr. Ignacio) was not charged with conspiracy to assassinate the former Chilean Ambassador to the United States, but the organization he lead and was a member of was mentioned prominently and repeatedly through the conspiracy count of the indictment.  *Sampol* at 644. The Court found this created improper prejudice against him and "[t]he evidence of guilt by association appears unmistakably in the most classic sense of the phrase." *Id.*

The disparity in the number and severity of crimes with which Mr. Brown is charged compared to Crowl, Beeks and Sorelle warrants severance. *See Sampol at* 651 (finding improper prejudice resulting from a joint trial against defendants charged with "grossly disparate" crimes); *Mardian*, at 977 (holding severance appropriate where, among other things, defendant was named in fewer counts than co-defendants).

### B.      There is Extreme Disparity in the Evidence Against Mr. Brown and the Other Defendants

The evidence against Mr. Brown is de minimis when compared to the evidence against Crowl, Beeks and Sorelle.  Based on Mr. Brown's misdemeanor Information, the other defendants' felony Indictments, and the discovery produced by the government, much of the evidence has little to do with the prosecution of Mr. Brown.  It is beyond reason to believe that the number witnesses or amount of evidence needed to convict an individual of two petty offenses or misdemeanors is anywhere close to what is needed to convict multiple defendants of multiple felonies. Based on the undersigned's collective experience of several decades, a misdemeanor trial would take a day or two days at the most.  The trials in the three proceeding Oath Keeper cases took several weeks, with the one against Stewart Rhodes taking *approximately eight weeks.*

There is nothing in either Indictment suggesting Mr. Brown conspired to obstruct the operation of Congress, destroyed government property, obstructed justice, participated in civil unrest or committed any felonies on January 6, 2020. *See Kotteakos,* at 773 (severance warranted where conspiracy alleges disparate crimes and smaller sub-conspiracies); *Mardian,* at 977 (severance appropriate where, among other things, defendant was not charged with activity through the end of the conspiracy). Given the dramatic imbalance in the evidence, Mr. Brown should be severed. *See Mardian,* at 977-78 (severance appropriate where all defendants were charged with conspiracy, but movant was alleged to have only participated in 5 of the 45 alleged overt acts and his participation was minimal).

C.      **The Risk of Unfair and Substantial Prejudice Arising from the Extreme Disparity in Charges and Evidence Can Only Be Cured Through Severance**

Due to the great disparity in the charges and evidence, as well as the complex nature of the case against the other defendants, it would be unrealistic to expect jurors to be able to separate and compartmentalize the charges and evidence against Mr. Brown from that of Crowl, Beeks, and Sorelle.  A severance is thus necessary to avoid juror confusion and ensure Mr. Brown's constitutional right to a fair trial. *United States v. Sutton,* 801 F.2d 1346, 1363-64 (D.C. Cir. 1986).

In a joint trial, Mr. Brown, his counsel, and the jury would be forced to contend with voluminous evidence and pre-trial motions focused not on Mr. Brown but on the other defendants. Much of that evidence—which would be prejudicial and likely inadmissible as to Mr. Brown in a separate trial—would include evidence regarding a separate charged conspiracy by persons other than Mr. Brown, evidence of concealment and obstruction,

This evidence, which is inapplicable to Mr. Brown, is likely to be extensive, in the form of electronic communications, witness testimony, and thousands of pages of records concerning events and transactions involving the other defendants but not Mr. Brown. In a joint trial, the jury would be asked— but unlikely able—to sift through all this evidence to isolate what little may be relevant to Mr. Brown. *See United States v. Stewart*, 104 F.3d 1377, 1382 (D.C. Cir. 1997); *Sampol,* at 646-47 (noting that, because the evidence against a co-defendant "so exceeded and varied from that which was necessary or relevant

to" the charges against the defendant, it was "unrealistic to expect a jury not to be influenced by such extraneous" evidence). The risk of juror confusion is particularly acute here given some of the extraneous evidence against other defendants involve outrageous plans and conduct by the other defendants. *See Sampol*, at 643-45 (noting unfair prejudice resulting from language in the indictment and witness testimony that intertwined the charges and defendants and thus was likely to confuse the jury). Considering all these factors, limiting jury instructions—which are sometimes used to cure the risk of prejudice—would be insufficient here. *Kotteakos*, at 766-67 (acknowledging the "burden of defense to a defendant" in "looking out for and securing safeguard against evidence affecting other defendants, to prevent its transference as 'harmless error' or by psychological effect, in spite of [limiting] instructions").

Though joinder may be a more efficient way to try defendants who participated in the same act or transaction, that convenience should yield to the greater interest of protecting Mr. Brown's constitutional right to a fair trial. A separate trial would permit the jury to make a "reliable judgment about [Mr. Brown's] guilt or innocence," *Zafiro,* at 539, based solely on the charges and evidence relevant to him and not others, *see Sampol*, at 647 (granting severance where court would "find it unreasonable to expect that the jury succeeded in compartmentalizing the evidence adduced"). In any event, a separate trial against Mr. Brown would be streamlined and focused and thus would not expend significant judicial resources. Given his limited charges, his trial would last a day or two.  Mr. Brown's particular factual circumstances would counter weigh the Court's interest in conserving time through a joint trial.  *Sampol* at 646.

In his concurrence in *Krulewitch v. United States,* 336 U.S. 440 (1949), Justice Robert Jackson aptly articulated the substantial risk posed by trying Mr. Brown with the other defendants. As Justice Jackson noted: "A co-defendant in a conspiracy trial occupies an uneasy seat. There generally will be evidence of wrongdoing by somebody. It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together." *Id.* at 454.

**CONCLUSION**

For the reasons stated above, Mr. Brown respectfully requests that he be tried separately from

Defendants Crowl, Beeks, and Sorelle and the United States Motion For Joinder of Cases for Trial be

denied.

Dated:  March 23, 2023

Orlando, Florida

Respectfully submitted,

By:        /s/ *Dan Eckhart*          /s/ *David Bigney*
            DAN ECKHART, Esq.       DAVID BIGNEY, Esq.
            FL Bar No. 488674         FL Bar No: 132454
            200 E. Robinson St., Ste. 1150  215 East Livingston Street
            Orlando, FL. 32801        Orlando, Florida, 32801
            dan@daneckhartlaw.com    dbigney@bigneylaw.com
            (407) 276-0500          (407) 425-6068

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2023, I electronically filed the foregoing with the Clerk of the
Court using the CM/ECF system which sent notification of such filing to all parties listed on the Electronic
Case Filing (ECF) System.

               By:     /s/ *Dan Eckhart*         /s/ *David Bigney*
                         DAN ECKHART         DAVID BIGNEY