IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,                     Case No.: 1:21-cr-00609-APM-1

    v.

JEREMY BROWN.

_____/

## MOTION TO SUPPRESS

COMES NOW Jeremy Brown, via undersigned counsel, and moves this Honorable Court to exclude all seized evidence in this matter pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C), reserving the right to amend this Motion prior to hearing, and as grounds for the suppression states as follows:

Defense requests all evidence pursuant to an unlawful search and seizure under Federal Rule of Criminal Procedure 12(b)(3)(C), and pursuant to the tenets of the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized[,]" be suppressed. Amend. IV, U.S. Const.  Importantly, the Search Warrant issued out of the District of Columbia for January 6, 2021 allegations was the same Search Warrant used in the Middle District of Florida now on appeal at the 11th Circuit.

On September 30, 2021, Brown's residence, R.V., trailer, and truck were searched without probable cause or a valid search warrant. Brown's case (8:21-CR-348-T-SCB-SPF) in the Middle District of Florida (MDFL) is presently on appeal at the United States Court of Appeals for the Eleventh Circuit (23-11146), and is addressing issues that are determinative in the proceedings before this Court.

## FACTUAL BACKGROUND

Prior to January 6, 2021, Brown received security credentials from the permitted event organizers

and permit holders. (Ex. A). On January 5, 2021, Brown provided protection at the Supreme Court and on January 6, 2021, was permitted to attend a political rally wherein Brown provided protection in the VIP area of the rally, which was inside the Secret Service's security zone and included then President Trump's presence. Brown never entered the Capitol Building and provided lawful and peaceful protection not only to his assigned protectee, but to others in the vicinity including an elderly woman, as seen on video played on the floor of the House of Representatives by Representative Louie Gohmert. But for Brown's assistance, the aforementioned woman would likely have been trampled by others and law enforcement.

Law enforcement investigated Brown's actions on January 6, 2021, for 267 days. Subsequently, on September 29, 2021, the District of Columbia issued an arrest warrant based upon Special Agent Hill's submission of a criminal Complaint (ECF # 1- Sealed) on two misdemeanor trespass charges to Magistrate Judge Robin Meriweather. Also, on September 29, 2021, Hill separately submitted an Application for a Search Warrant to magistrate Judge Zia Faruqui to search Brown's residence, R.V., trailer, and personal cell phone, which, according to time stamps, was approved within roughly twenty-nine seconds. (Ex. B). Interestingly, Hill alleged there was probable cause for violations of 18 U.S.C. §§ 231(a)(2), 371, 844(a)(2), and 1752(a)(1) and (a)(2) on the face of her Application. However, she concluded there was only probable cause for violations of 18 U.S.C. §§ 371 and 1752(a)(1) and (2) in her probable cause affidavit, neither of which supports a claim for domestic terrorism.

The National Terrorism Operations Center (NTOC) first opened an assessment of Brown on November 18, 2020, which was initially closed on December 17, 2020. (Ex. C).  NTOC reopened the file on January 5, 2021, and closed the file a second time on January 13, 2021, after finding Brown (1) was "*[n]o threat to national security[,]*" (2) the issue was likely based on false allegations deriving from a domestic dispute, and (3) the "*allegations largely appear to constitute [a] First Amendment protected activity.*" (emphasis added). It also appears Hill neglected to inform Judge Faruqui as to Brown being

cleared of allegations of being a threat to national security by NTOC on two separate occasions, prior to requesting an out of jurisdiction search warrant under Rule 41(b)(3). Fed. R. Crim. P.

On December 9, 2020, the two agents with the FBI's Joint Terrorism Task Force (JTTF) met with Brown face-to-face to discuss his willingness to work as a Confidential Human Source (CHS). Brown declined their offer and recorded the entire meeting with the agents' knowledge. Brown went public with the recording on March 5, 2021. The FBI was made aware of Brown's disclosures on March 12, 2021, yet a formal investigation was not opened until July 16, 2021, in the Atlanta Field Office and on July 20, 2021 in the Tampa Field Office, both by Agent Brett Lindsay.  Lindsay is also one of the agents that attempted to recruit Brown on December 9, 2020 and communicated with Brown on the morning of January 6, 2021, and the evening of January 7, 2021. This sequence of events suggests the possibility of vindictive and selective investigation and prosecution due to Brown exercising his First Amendment right to freedom of speech.

Prior to executing the arrest warrant, the FBI's JTTF failed to secure an extradition warrant from the Governor of Florida, as required by the United States Constitution and Florida law. (Ex. D). When the officers arrived to execute both the arrest and the search warrant, Brown was apprehended in his driveway. The security video cameras at Brown's residence were unlawfully disabled by JTTF agents prior to their search, as the Search Warrant did not authorize law enforcement officers to do so.  Brown's girlfriend was also disallowed from recording the officers with her cell phone. Many items were seized during the search.

## ISSUES

1. **The District of Columbia Magistrate Judge lacked jurisdiction to issue a Search Warrant under Federal Rule of Criminal Procedure 41(b)(3).**

"[A] magistrate judge—in an investigation of domestic terrorism or international terrorism—with authority in any district in which activities related to the terrorism may have occurred has authority to

issue a warrant for a person or property within or outside that district". Fed. R. Crim. P. R. 41(b)(3). However, the NTOC, after two investigations, before and after January 6, 2021, found that Brown posed no threat to national security, a fact not communicated to Judge Faruqui in Hill's affidavit. After NTOC having performed two investigations into Brown and having deemed him to be no threat to national security, Judge Faruqui lacked any authority to issue an out of jurisdiction search warrant under Rule 41(b)(3) and likely would have denied the request had Hill not omitted this material fact.

The search warrant alleges potential violations of 18 U.S.C. § 371 (Conspiracy Statute); 18 U.S.C. 231 (Transport of firearms or explosive for use in a civil disorder); 18 U.S.C. § 844 (Transportation of explosives); and 4) 18 U.S.C. § 1752 (Unlawful entry on restricted grounds). The Affidavit in Support of Application for a Search Warrant (Ex. B) makes clear, in paragraph 3, that jurisdiction is based upon Rule 41(b)(3). "Although the premises are located outside this district, this Court has jurisdiction under Federal Rule 41(b)(3) because this is an investigation of domestic terrorism as that term is defined in Title 18 U.S.C. § 2331(5)(b)". The Application recites the verbiage of § 2331(5) as follows:

> The term "domestic terrorism" means activities that (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended- (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

It is unknown why Hill used Judge Meriweather to issue the Arrest Warrant for two misdemeanors based upon the Complaint and Judge Faruqui to issue the Search Warrant based upon Hill's Application. It is also unknown why Hill would allege probable cause existed for violations of 18 U.S.C. §§ 231(a)(2), 371, 844(a)(2), and 1752(a)(1) and (2) on the face of her application, but conclude probable cause only existed for violations of 18 U.S.C. §§ 371 and 1752(a)(1) and (a)(2) in the conclusion of her probable cause affidavit, where neither of the remaining violations support a claim for domestic terrorism.

-4-

The first nineteen plus pages of the Application have absolutely nothing to do with Brown and establish no probable cause as to Brown's actions on January 6, 2021. Defense asserts the wearing of tactical gear and possession of first aid items by Brown within the District of Columbia on January 6, 2021, do not establish probable cause for any felony or misdemeanor and are neither unlawful nor illegal.

The Facts specific to Brown in the Application refers to anonymous witness information and anonymous defendants (CHSs) who were not with Brown on January 6, 2021. Defense will be moving to compel the disclosure and identity of all witnesses against Brown as he has a Sixth Amendment right to confront and cross-examine all witnesses against him.

Particularly, anonymous witnesses and/or CHSs do not denote honesty and truthfulness.  Rather it can be argued said witnesses, particularly when being paid for information, as is the practice with CHSs; anonymous witnesses; and anonymous defendants (as contained in the application for the search warrant), infers a high potential of dishonesty and untruthfulness, thus failing to pass Sixth Amendment scrutiny concerning a defendant's Constitutional right to confront and cross-examine all witnesses against him. *U.S. v. Jones*, 930 F.3d 366 (5th Cir. 2019); *also see*, The Attorney General's Guidelines Regarding the Use of FBI Confidential Human Sources (2020) (Section V(B)(2)). The Defense's position is further supported here by the fact that the NTOC reasonably believed allegations made against Brown in his domestic terrorism investigation were false and stemmed from a domestic dispute, another fact not communicated to Magistrate Faruqui in Hill's affidavit.

Law enforcement discloses the name of Kelly Meggs in its Affidavit, a defendant who was at the time indicted but not convicted of several felonies including conspiracy. Meggs told Defendant 4 that Brown was a "loose cannon" and that there were explosives inside the RV. Defendant 4 positively identified Brown from a Twitter photo. The Government has not provided any law enforcement 302s or any discovery indicating statements for Meggs. Meggs was never inside Brown's RV.  Meggs in fact entered the Capitol Building. Brown took no such action on January 6 and had no prior nor real-time

knowledge of Meggs' actions or the actions of others on January 6, as it relates to the Oath Keepers. Meggs received a twelve-year sentence.

Brown's signal chat referenced in Paragraph 61 of the Application (Ex. B) lacks any probable cause of any domestic terrorism or international terrorism pursuant to 18 U.S.C. § 2331(5)(b) investigative or otherwise. Protected speech and other rights guaranteed under the First Amendment cannot be used to establish probable cause, which is highlighted in NTOC's justification for closing its investigation on January 13, 2021.

In paragraph 62 of the Application (Ex. B) Hill states that on January 6, 2021, Brown wrote, "everything you are watching on the Media and Houses of Congress is a LIE! I was shot in the neck with pepper balls and beaten in the forearm with a night stick trying to shield unprotected Civilians from being hit in the head. This was an exercise in the unrestrained addiction to power." Again, no probable cause exists whatsoever that Brown engaged in any Rule 41(b)(3) domestic terrorism at any time nor does his truthful protected speech establish cause of any ongoing 'domestic terrorist' activity. Again, the Court lacked probable cause to issue the Search Warrant.

Hill made an unconstitutional application via Rule 41(b)(3) to the Court, and as a result the Court issued the Search Warrant in violation of the Constitution for lack of probable cause, as there exists no substantial basis to conclude that probable cause existed, even when looking at the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213 (1983).

Hill asserts in Paragraph 66 of the Application (Ex. B) that records were obtained via a search warrant on Verizon on January 6, 2021, and that the cellphone associated with Brown "utilized a cell site consistent with providing service to a geographic area that included the interior of the United States Capitol Building." However, after 267 days Hill was unable to ascertain whether Brown entered the Capitol building, only that he was within the "restricted ground." A restricted ground that was not restricted when Brown arrived. Hill misled the Court when she states "not yet." Hill stated she didn't

know 'yet' if Brown entered the Capitol building.  Incredulous being Hill subpoenaed Verizon on January 6th for cell tower locater information on Brown.  If law enforcement can't determine after a 267-day long investigation whether or not Brown entered the Capitol – it becomes a dead horse.

Additionally, Special Agent in Charge Hill, in charge of Brown's case, would have known about the investigations conducted by NTOC and the JTTF.  It is a fortuitous circumstance for the Government to claim the cell in question "included the *interior* of the United States Capitol Building".  Defense is in need of taking the deposition *duces tecum* of Special Agent Hill and for Hill to bring the results of this January 6, 2021, search warrant to Verizon locating Brown at or inside the Capitol area, which the Government has yet to provide through discovery.

Hill refers to a Whiteboard with the words 'Good' 'Better' 'Best' in paragraph 68 of the Application. How was this whiteboard associated with January 6?  There is no nexus, hence no probable cause to issue a "domestic terrorism" search warrant 267 days after January 6, 2021. Further, Hill, in paragraph 71 of the Application (Ex. B), speaks of a family member of Witness 1 telling Witness 1 that Brown had possessions with multiple boxes and weapons scattered throughout the house.  Hill goes on to say photos of the home on Zillow now show an organized home, inconsistent with Witness 1's description of the house.

It is evident Hill lacked any probable cause for the Application and the Court did not have jurisdiction nor probable cause to issue the Search Warrant based upon an investigation of "domestic terrorism" pursuant to Rule 41(b)(3) and the definition of domestic terrorism pursuant to 18 U.S.C. § 2331(5)(b).  There was no ongoing domestic terrorism investigation.  Brown did exercise his free speech after January 6, 2021.

At the time Hill applied for a search warrant on September 29, 2021, there existed no nexus that Brown possessed or used firearms, explosives, or other weapons on January 6, 2021, nor did there exist any probable cause that any weapons were used on January 6 to enter the United States Capitol (Brown

never entered the Capitol Building). The Application for the Search Warrant was dated September 29, 2021. After a 267-day long investigation into "domestic terrorism," no weapons use was alleged against Brown on or after January 6, 2021.

Therein lies the Government's flawed argument as to the Constitutionality of the search warrant and its jurisdiction pursuant to Rule 41(b)(3) as argued in Brown's appeal at the 11th Circuit. If no weapons were used by Brown on January 6, 2021, and he did not enter the United States Capitol Building, or possess any weapons whatsoever in the District of Columbia, wherein was the probable cause as it relates to January 6? Not only was the warrant stale, it was applied for in bad faith by Hill, and lacked probable cause. Therefore, the District of Columbia lacked jurisdiction under Rule 41(b)(3) for the warrant for Jeremy Brown's property located in the Middle District of Florida.

No good faith exception applies to the execution of the Search Warrant as a Magistrate in the District of Columbia was misled by Hill's Application as it contained information that was false or fabricated and, irrespectively, was most certainly misleading. Hill purposefully omitted material information from the NTOC assessment of Brown from November 18, 2020, thru January 13, 2021, concluding that Brown was "No National Security Threat." Nor did Hill inform either Judge Meriweather or Judge Faruqui in her Application that the JTTF attempted to recruit Brown as a CHS on December 9, 2020. However, Hill certainly would have known, as she was getting information for her Affidavit from Agent Lindsay.

The Application also contained anonymous information from unknown sources veiled in secrecy in violation of Brown's rights under the Sixth Amendment. There was no "ongoing investigation" as to Brown's actions before, during, or after January 6, 2021. Rather there was a likely setup not only by unknown individuals contained in the Application but by law enforcement's tampering when they disabled Brown's home surveillance system (said law enforcement action not included in the warrant) prior to their search.

-8-

Case 1:21-cr-00609-APM   Document 61-1   Filed 07/22/24   Page 9 of 16

**2.  Law Enforcement unlawfully and in violation of the Constitution disabled Brown's surveillance cameras prior to searching the home, RV, and trailer.**

Law enforcement had no authority to disable Brown's surveillance cameras, as this request was not made in their application nor contained in the Search Warrant.  Note: it was alleged at trial in the MDFL case that law enforcement tampered with and planted evidence, as suggested by forensic evidence and a finding of not guilty as to four charges connected to a CD with "classified" material on it.  Said argument stands in this case, that law enforcement tampered with evidence.  Here the focus is on law enforcement's unauthorized disabling of Brown's surveillance cameras in order to accomplish a set-up of Brown. It is incredulous that law enforcement is required to wear body cameras, yet, can disable a person's video home surveillance without a warrant to do so.  If law enforcement was concerned with their safety, they would have included the need to disable Brown's home surveillance cameras in their Application, however they did not. Home invasion burglars disable home surveillance cameras prior to a stealthy entry to conceal their criminal activity. Why, in this case, did law enforcement take the same actions as home invaders?  Leaving the issue of why were the home surveillance cameras disabled at all by law enforcement without search warrant authorization to do so?

Lindsay was the agent that attempted to recruit Brown as a confidential source on December 9, 2020. Lindsay was also present during the search of Brown's property and would have known who, without authority, dismantled Brown's surveillance cameras. Lindsay also opened the field office investigations on Brown, but only after Brown exercised his First Amendment right to free speech pertaining to protected speech in March of 2021 and beyond by exposing Agent Lindsay's attempts to recruit Brown prior to January 6, 2021.

**3.  The lack of Veracity and lack of Probable Cause for the Search Warrant requires a Franks hearing.**

It is argued that Special Agent in charge Hill bypassed the Constitutional guarantees under the Fourth Amendment against unreasonable searches and seizures in bad faith in her Application for the

Search Warrant in several ways.

Hill concealed pertinent and material investigations, information, and matters from the Court upon which the Court would have relied and considered prior to the issuance of a search and arrest warrant. If said information would have been known via Hill's Application to the Court, the Court may very well have not issued the warrants. For these reasons Brown has propounded a substantial preliminary showing of malfeasance and intentional omission(s) by the Search Warrant's Affiant Hill and is entitled to a *Franks* evidentiary hearing.

Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) and under the Fourth and Fourteenth Amendments, to be entitled to a hearing defense must make a preliminary showing that 1) the Affiant deliberately or recklessly included a false statement, or failed to include material information in the warrant affidavit; and that the allegedly false statement or omission was necessary to the finding of probable cause; and 2) that the allegedly false statement or omission was necessary to the finding of probable cause. *Id.* Here Hill purposefully failed to include material information in the warrant's Affidavit. Specifically, Hill made no mention of the NTOC investigation into Brown and omitted said information from her Affidavit. The NTOC investigation and assessment of Brown commenced on November 18, 2020, and culminated on January 13, 2021. On January 13, 2021, that assessment was closed with findings that Brown was (1) "[n]o threat to national security[,]" (2) the issue was likely based on false allegations deriving from a domestic dispute, and (3) the "allegations largely appear to constitute [a] First Amendment protected activity." (Ex. C).

Hill deliberately omitted this critical and material information in her Affidavit to the Court. How could this investigation and assessment of Brown not be included in the Affidavit propounded to Judge Faruqui in the District of Columbia? If said information had been included it would have prevented a finding of probable cause. Rule 41(b)(3) relies upon an investigation of domestic terrorism or international terrorism in order to effectuate a warrant being issued within or outside the district. This is

exactly the type of information Magistrate Judge Faruqui would have wanted to know. *Andrews v. Sciulli*, 853 F.3d 690, 698 (2d Cir. 2017).

Even if Hill did not intentionally and deliberately mislead the Court by omitting material information, "recklessness may be inferred from omission of facts which are 'clearly critical' to a finding of probable cause." *DeLoach v. Bevers*, 922 F.2d 618 (10th Circ. 1990).

The only jurisdictional authority the District of Columbia had to issue the arrest warrant was for the two misdemeanor trespasses against Brown, which allegedly transpired on January 6, 2021. No more, no less. The District of Columbia did not have jurisdictional authority to issue the Search Warrant. First, Agent Hill and Agent Lindsay both proceeding in a conspiratorial, bad faith manner, in vindictive retaliation to Brown's First Amendment protected free speech, misled the Court and omitted facts as to why an investigation was opened. Second, on September 30, 2021, Agent Lindsay and the FBI's JTTF dismantled Brown's home video cameras without authority or warrant to do so. Third, we have Agent Hill intentionally and purposefully misleading the Magistrates in the District of Columbia while omitting material and critical findings by NTOC requiring a *Franks* hearing.

It would be incredulous for this Court to 1) believe Hill had no knowledge of the NTOC findings as to Brown being "[n]o threat to national security" and 2) that said NTOC finding could not be more pertinent and material as to the Affiant's reliance on Rule 41(b)(3). Probable cause would have been lacking if said omissions had been included in Hill's Affidavit to Judge Faruqui.

Defense is prepared to bring forth an offer of proof to the Court prior to trial at a *Franks* evidentiary hearing, and only after taking the deposition of Hill as justice and the Sixth Amendment require.

Although Hill's Affidavit mentioned 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 231(a)(2) (transport of firearms or explosives for use in civil disorder), 18 U.S.C. § 844(a)(2) (transportation of explosives), and 18 U.S.C. § 1752 (unlawful entry on restricted buildings or grounds). The only alleged

offense that occurred within the territory of the District of Columbia was the misdemeanor trespass under 18 U.S.C. Sec. 1752.  There existed no alleged activities of "terrorism" that occurred in the District of Columbia or elsewhere.

Government has repeated their highly subjective broad net opinions of what January 6, 2021, was about, ad nauseum (also see congressional January 6th Committee hearings).  However, none of the Government's opinion(s) referenced in hundreds of January 6, 2021 prosecutions have to do with the majority of attendees in the District of Columbia on that date, including Brown. Nor did Brown partake in entering the Capitol Building or being violent in any way, shape, or form while in the District of Columbia.  On the contrary, some law enforcement officers were not only unreasonably extremely violent, provoking attendees to defend themselves, Brown protected civilians who were outside the Capitol while he was permitted to be there for that very reason – protection. (Ex. A).  Meaning, for any Magistrate Judge or District Judge to rely on the investigation of January 6, 2021, as a broad sweep investigation of "domestic terrorism" is an affront to the United States Constitution and our Bill of Rights.

Brown has made a substantial preliminary showing that he is entitled to a *Franks* evidentiary hearing. Denial of an evidentiary hearing is reviewed for an abuse of discretion.  Hill's failure to include material information in the Affidavit was an intentional omission of this material fact necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978).  Probable cause was lacking due to Hill's purposeful omission and misleading of the Magistrate Judge.

4. **The search warrant applied for and issued by Judge Faruqui was constitutionally deficient for lack of particularity.**

To be constitutionally sound, a search warrant must be based on probable cause, sworn to under oath, and describe with particularity the places to be searched and the people and/or things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  The face of the warrant must meet the constitutional requirements, and the government cannot rely on additional documentation unless they are properly

incorporated by reference on the face of the warrant. *Id*. at 557-558.

Evaluating the face of the search warrant, the warrant fails constitutional muster for multiple reasons and the government cannot rely on the claim of a scrivener's error or on "see attached affidavit" in the section addressing Rule 41(c) on the Application to salvage the warrant from the Government's intentional omissions and/or recklessness in the application process.

First, the Government exceeded the scope of the places to be searched. While the caption for both the Application and the Warrant indicate the Government may have desired to search the House, the RV, the Black Trailer, and the Cell Phone (Search Warrant Attachments "A", "B", "C", and "D" respectively), it requested and was only granted access to search the house by incorporating Attachment A by reference. So, by searching the RV, black trailer and cell phone, the Government either exceeded the scope of the places to be searched or the Warrant is facially invalid for lack of particularity in the places to be searched.

Second, the warrant lacked particularity in the things to be seized because there was no list of property specified. The only thing listed to be seized was the RV by incorporating Attachment B of the Search Warrant by reference. In its response to Brown's Brief to the Eleventh Circuit, the Government claimed this was simply a scrivener's error. However, this argument is absurd for three reasons. (1) The Government repeated the exact same mistake it made when describing the places to be searched. (2) Attachment B, the Affidavit that forms the basis for the alleged scrivener's error, is referenced in support of the Rule 41(c) justification on the Application, but Attachment E of the Search Warrant is not included in the property to be seized on either the application or the warrant. And while the Government might want to hang its hat on the fact that the Application references the document in question, the *Groh* Court clearly stated an "application adequately describing the 'things to be seized' does not save the warrant from its facial invalidity." *Id*. at 557. (3) If the Government had simply made a scrivener's error it would have at least collected the evidence it claimed to be searching for in its affidavit.

Additionally, Brown's phone was not located on his person when he was arrested. His phone was

-13-

located in his pickup truck that was parked across the street from his property at the time of his arrest. Brown's truck was not included on the search warrant as a place to be searched in any capacity. Brown can be heard in a video recorded by his girlfriend when he was arrested that he did not give consent to enter his truck to anyone other than his girlfriend. Brown's girlfriend can be heard in the same video refusing to open the door to her residence, a location authorized to be searched, until she saw the warrant, which members of the JTTF indicated was not even present at the time the arrest warrant was executed and the search warrant was attempted to be executed.

Unfortunately for the Government, it did not collect the gear Brown was wearing on January 6 during its unconstitutional search, despite it being located adjacent to other property that was searched and or seized. Therefore, this shows either the Government had no clue what it was searching for because the warrant lacked particularity in the things to be seized or the Government had an ulterior motive to search Brown's property, which is supported by the fact that the Government disconnected Brown's CCTV cameras before the search got underway. Therefore, because the warrant lacked particularity in the places to be searched and in the things to be seized, the warrant signed by Judge Faruqui and executed by the FBI's JTTF fails constitutional muster making it an illegal search and seizure, and the FBI's JTTF exceed the scope of the warrant to seize Brown's phone from his pickup truck, all property collected is fruit of the poisonous tree and must be seized.

5. <u>**The Search Warrant was unconstitutional as Rule 41(b)(3) violates the Fourth Amendment by authorizing a search with less than probable cause.**</u>

Rule 41(b)(3) of the Federal Rules of Criminal Procedure, authorized by the USA Patriot Act of 2001, enables a federal judge to issue an out of jurisdiction search warrant "in an investigation of domestic terrorism or international terrorism[,]" if any of the alleged activities occurred in his district. As of January 6, 2021, there was "no federal criminal provision expressly prohibit[ing] 'domestic

-14-

terrorism'" in the entire United States Code. Peter G. Berris et al. (July 2, 2021). *Domestic Terrorism: Overview of Federal Criminal Law and Constitutional Issues* (CRS Report No. R46829). And to this day, Congress has not passed any such legislation.

For a search warrant to be issued, the Fourth Amendment dictates a judge be presented with probable cause of a criminal act that is supported by an oath or affirmation. However, Rule 41(b)(3) authorizes the issuance of a warrant for a domestic terrorist investigation.  Domestic terrorism is not a crime, therefore, probable cause does not exist.  Rule 41(b)(3) authorizes the issuance of a warrant with the opening of an investigation. As was the case here on November 18, 2020.  For example, an unknown first-time reporter can contact a generic government phone number; provide uncorroborated allegations, misrepresentations, and outright lies; and initiate a terrorism investigation. As soon as that first call is made, an improperly ~~properly~~ motivated government agent can petition a judge for a warrant based on a definition and an investigation, with no probable cause of a criminal act.

Brown's case epitomizes why Rule 41(b)(3) is repugnant to the Constitution. The mere fact an investigation into 'domestic terrorism' was opened was sufficient for a warrant to be issued. However, Brown was cleared of any suspicion of being a threat to national security by NTOC 260 days before the warrant's issuance, finding the allegations against him to be false; the warrant's affiant made no conclusion of probable cause for any criminal act that would reasonably support a claim under the definition of "domestic terrorism".  Despite these facts a warrant was still issued for a non-statutory criminal act for probable cause under Rule 41(d).  Therefore, because Rule 41(b)(3) enables the issuance of a warrant merely based on the existence of an investigation into a non-criminal act, probable cause cannot exist under rule 41(d).  Rule 41(b)(3) violates the standards imposed by the Fourth Amendment, the warrant issued by Judge Faruqui was unconstitutional, and the statute authorized by the Patriot Act is unconstitutional and all property seized must be suppressed.

6.   <u>**The Affidavit on the Search Warrant was stale and no good faith exception exists**</u>.

The search warrant in this matter was stale and no good faith exception exists as Judge

Faruqui was misled by Agent Hill's Affidavit of which Hill knew or should have known was false.

*U.S. v. Grant*, 682 F.3d 827 (9th Cir. 2012).

Moreover, there was no recent information included in Hill's Application for Search Warrant

(Ex. B) of any corroborative information between January 6, 2021 and September 29, 2021.  *United*

*States v. Doyle*, 650 F.3rd 460  (4th Cir. 2011).   The only recent information was attributed to Brown's

1st Amendment protected speech and Agents of the Federal Government that were upset that Brown, in

fact, exercised his protected speech under the 1st Amendment post January 6, 2021.


WHEREFORE, Defendant respectfully requests this Motion to Suppress be granted and

the Court enter its Order accordingly.


<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Suppress has been furnished via Electronic Filing to Rebekah Lederer, AUSA, Eli Ross, AUSA, and Kathryn Racowzsky, AUSA, Office of the U.S. Attorney, District of Columbia, and all other parties listed on this 22nd day of July, 2024.


*/S/ Maria T. Rodriguez*
_____
Maria T. Rodriguez, Attorney at Law
P.O. Box 2176
Tarpon Springs, FL 34688
Tel: (727) 238-2342
Fla. Bar No.: 168180
US MDFL, US SDFL, AND US DC
attorneymariar@aol.com