UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-cr-609 (APM) |
| v. : | |
| : | |
| JEREMY BROWN, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S RESPONSE TO DEFENSE MOTION IN LIMINE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Defendant's Motion in Limine. ECF 72. The defendant seeks to prohibit the government from introducing:

(1) Statements by the Defendant and members and affiliates of the Oath Keepers that reflected an intent to forcibly oppose the results of the election; and,

(2) Evidence that the defendant and members and affiliates of the Oath Keepers transported weapons to the Washington D.C. region for the events on January 6, 2021.

The government refers the Court to the government's notice pursuant to Fed. Rule of Evidence 404(b) that addressed the government's theories on admissibility for both enumerated categories of evidence. ECF 50. Additionally, the government provides the following clarifying facts for the Court's consideration.

In advance of trial, the government continues to review the available evidence to streamline the government's case-in-chief while proving the elements of the charges beyond a reasonable doubt. This includes reviewing hundreds of messages on various Oath Keeper Signal chats to determine which messages are most relevant to the defendant's intent and motive on January 6,

2021.[1] On August 19, 2024, in response to a request by the Court to provide the Court statements the government intended to admit against the defendant at trial, the government provided 18 co-conspirator statements and 14 messages by the defendant. Brown's own statements on this chat are all admissible against him under Rule 801(d)(2)(A) of the Federal Rules of Evidence, as he is an opposing party.

With respect to the 18 statements by others, the government derived 15 of the referenced 18 co-conspirator statements from a Signal chat of Florida Oath Keepers that included the defendant. These statements are admissible under a variety of exceptions to the hearsay rule. Some of these statements are non-hearsay, because they will not be introduced as assertions of fact but rather as verbal acts. For example, "Adding Oath Keeper Jeremy Brown Tampa retired Special Forces," followed by Brown's responses, is evidence of when Brown was added to and began participating in the Florida Oath Keepers' main Signal chat. Messages like Florida Oath Keepers leader Kelly Meggs' statement, "We need to have a call about DC; After Christmas; I'll set it up but only for those going" will assist the government in establishing the timeline of when the Florida group, including Brown, began planning to travel to the D.C. area for January 6.

Other statements are admissible against Brown as statements Brown showed himself to have adopted and/or believed to be true, pursuant to Rule 801(d)(2)(B), or as co-conspirator statements in furtherance of a conspiracy, under Rule Rule 801(d)(2)(E). These statements include:

- Meggs on 12/24/20: "We have 10-12 staying there . So it's gonna be a WILD time in DC we gotta get the crowd going during the day . I think we get everyone up good and close to the Capitol bldg so they can here is inside . Then at night well whatever happens happens ."

---

[1] Signal is an encrypted messaging application.

- "Aaron" on 12/25/20: [Posting a link: https://www.naturalnews.com/2020-12-25-prepare-for-war-expect-all-hell-to-break-loose.html], and the responses by Meggs and Florida QRF hotel room captain Kenneth Bittner ("Gator"):

    o Meggs: "Great article to post here Cat Daddy[.] Time for a gut check from everyone in this room . If this is our course where do you fit in . This is where we are , we have been invaded . Patriots are going to stand and we have to lead them! Make sure you are really ready not just talking ! The country is gonna need us !"

    o Meggs: "We need to wait patiently and then be the leaders."

    o Bittner: "'if this election situation is not resolved on January 6th, all hell is going to break loose across America.' So, 'resolved' which way?  (imho) either way is going to set it off!"

- Stewart Rhodes' 12/25/20 messages, in response to a question about what he thought would happen on January 6:

    o "[President Trump] is being advised to wait till the 6th in reliance on Congress. His "legal advisors" are NOT actually advising him (not laying out all his actual options like a real staff member should, and then let him decide).  They are instead acting as if his only option is to hope Congress does the right thing - which is extremely unlikely.  I'm working to get him to see other options and put them on the table."

    o "I think Congress will screw him over.  The only chance we/he has is if we scare the shit out of them and convince them it will be torches and pitchforks time is they don't do the right thing.  But I don't think they will listen."

- o "It's not a fools errand. It has benefits regardless of outcome and regardless of what we then do. Trump needs to know we support him in using the Insurrection Act. And that needs to be the message - If Congress rubber stamps an unconstitutional fraud, President Trump must defend the Constitution and we URGE him to use the Insurrection Act to do so. And we will support him with our boots on the ground nationwide and we will protect him, and assist him. He needs to know that to his bones. We need to make it clear. And we need to have that message echoing off every roof top from now till that day. Focus like a laser on it. And he needs to know that if he fails to act, then we will. He needs to understand that we will have no choice."
- The 12/31/20 post by "Ron Bass": "There's multiple teams on the field The Patriots, the Politicos in Congress, The anarchists, etc. But the biggest and baddest team is the Patriots as in we the people. It's our job to reverse that election and get the true winner back and do that by any means necessary while Trump still controls the Military. And particularly special Forces the wild card on the field could be the proud boys."

Brown's decision, roughly a week later, to join members of this group, including Meggs and Bittner, in caravanning to Washington D.C., for January 6, to join Rhodes' group, is highly probative evidence of Brown's intent in making that journey and his subsequent decision to breach the Capitol grounds on January 6. These statements are therefore admissible as either non-hearsay evidence of his intent, because Brown manifested evidence of adopting them under Rule 801(d)(2)(B).

Such statements are also admissible under Rule 801(d)(2)(E). This Court has already ruled, in the related matters of *United States v. Elmer Stewart Rhodes III, et al.*, No. 22-cr-15, and *United States v. Sandra Parker, et al.*, 21-cr-28, that "the evidence has established certainly through the other trials a *prima facie* case that [Brown] was involved in the alleged conspiracy" by Oath Keepers members and affiliates to oppose by any means necessary, up to and including the use of force, the lawful transfer of presidential power following the 2020 election, including by obstructing the official proceeding on January 6, 2021, and by forcibly preventing members of Congress from discharging their duties that day. *See Parker*, 1/20/23 Tr. at 39-40. The evidence introduced at this trial will also establish sufficient evidence of a conspiracy for these statements to be admitted under Rule 801(d)(2)(E).

With respect to the remaining three statements by others, the government derived these messages from a different Signal chat among Oath Keeper leadership that did not include the defendant. However, at trial, the government will show that the defendant moved and coordinated with senior members of the Oath Keepers when these messages were sent and responded accordingly. Specifically, the government will seek to introduce messages by Oath Keepers leader Stewart Rhodes to the "DC OP: Jan 6 21" chat at 1:25 p.m. ("Pence is doing nothing. As I predicted.") and 1:38 p.m. ("All I see Trump doing is complaining. I see no intent by him to do anything. So the patriots are taking it into their own hands. They've had enough."), and a message by the Oath Keepers "operations leader" for January 6, to the same thread, at 2:15 p.m. ("The[y] have taken ground at the capital[.] We need to regroup any members who are not on mission."). While Brown was not a member of this chat, Oath Keepers regional leaders Jessica Watkins of Ohio and Meggs of Florida were. The government will further show that at 1:27 p.m., two minutes after Rhodes' message about how "Pence is doing nothing," Jessica Watkins ordered the Oath

Keepers who were gathered near the Ellipse, including Brown, to "Move!" and the group started marching towards the Capitol. At about 2:24 p.m., nine minutes after the message from the operations leader, the Oath Keepers group (including Brown) huddled around Meggs on a path along the north side of the Capitol grounds. Caleb Berry, a Florida Oath Keeper who was part of that huddle and who traveled to D.C. for January 6 with Brown, is expected to testify that, during a huddle on the Capitol grounds on January 6, Meggs told the group that they were "going to try and stop the vote count." Such statements and actions by the other members of Brown's group bear directly on the group's intent in breaching the restricted areas of the Capitol.

  The remaining two co-conspirator statements the government seeks to admit consist of two letters to the former president composed by Rhodes. In these letters, Rhodes, *inter alia*, discusses the use of the Insurrection Act to keep the former president in power following the 2020 presidential election. Similarly, in Signal messages by the defendant, the defendant and other co-conspirators echo their leaders' comments regarding the Insurrection Act and the need to forcibly oppose the results of the 2020 presidential election on January 6, 2021.

  The government also intends to efficiently present evidence concerning the second category the defendant seeks to proscribe. Aside from discussions of weapons contained in the messages discussed *supra*, the government will not admit additional exhibits in its case-in-chief regarding the transportation of weapons to Washington D.C. *See* ECF 66. Instead, subject to the Court's ruling, the government will offer limited testimony regarding the following topics:

  (1) A brief background on the Oath Keepers.

  (2) The defendant's role as an active member of the Florida affiliate of the Oath Keepers in advance of January 6, 2021.

  (3) Coordination and preparation by the defendant and other Oath Keepers for the events

of January 6, 2021. This included advocating for the use of the Insurrection Act to oppose the results of the 2020 presidential election.

(4) The defendant's travel with other Oath Keepers to Washington D.C. on January 4, 2021. As part of this travel, the defendant transported weapons to Washington D.C. for use – if necessary – by a quick reaction force (QRF) located at a hotel in Arlington, Virginia.

The government will not offer the Court an in-depth exposition on the Oath Keepers and their activities surrounding January 6, 2021, at trial. However, some testimony regarding the defendant's role with the Oath Keepers organization – including his decision to transport weapons to Washington D.C. – is critical to contextualize the defendant's actions and understand his intent and motivations on January 6, 2021.

Lastly, the defendant cites various concerns with the proffered evidence under Fed. Rule of Evidence 403. ECF 72 at 2. While the government's continued efforts to efficiently present the voluminous evidence in this case undercuts the defendant's evidentiary arguments in this regard, the defendant has since provided notice of an intent to proceed with a bench trial.[2] ECF 75. This development should ameliorate the defendant's concerns as this Court – who has overseen several trials regarding members of the Oath Keepers organization – can appropriately consider and weigh the government's evidence without the risk of undue prejudice, confusion, or delay.

Therefore, the government requests the Court deny the defendant's motion in limine, or alternatively, reserve ruling until presentation of the evidence at trial.

Respectfully submitted,

---

[2] The government does not object to this request.

                                        MATTHEW M. GRAVES  
                                        United States Attorney  
                                        D.C. Bar No. 481052

By:                */s/ Eli Ross*  
                     Eli Ross  
                     Assistant United States Attorney  
                     Bar No. IL 6321411  
                     U.S. Attorney's Office for the District of Columbia  
                     601 D Street, N.W.  
                     Washington, D.C. 20530  
                     Tel No. (202) 297-1515  
                     Eli.Ross@usdoj.gov

                     */s/ Rebekah Lederer*  
                     REBEKAH LEDERER  
                     Pennsylvania Bar No. 320922  
                     Assistant United States Attorney  
                     U.S Attorney's Office for District of Columbia  
                     601 D St. N.W  
                     Washington, DC 20530  
                     Tel. No. (202) 252-7012  
                     rebekah.lederer@usdoj.gov